Filed 2/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANGELICA RAMIREZ, Plaintiff and Respondent, v. CHARTER COMMUNICATIONS, INC., Defendant and Appellant. | B309408 (Los Angeles County Super. Ct. No. 20STCV25987) |

APPEAL from a judgment of the Los Angeles County Superior Court. David J. Cowan, Judge. Affirmed.

Hill, Farrer & Burrill, James A. Bowles and Casey L. Morris for Defendant and Appellant.

Panitz Law Group and Eric A. Panitz for Plaintiff and Respondent.

Plaintiff Angelica Ramirez and defendant Charter Communications, Inc. (Charter) are parties to an arbitration agreement. After Charter terminated Ramirez's employment, Ramirez filed suit alleging claims under the Fair Employment and Housing Act (Gov. Code, § 12940, et. seq.; FEHA)[1] against Charter, and Charter filed a motion to compel arbitration. Finding the arbitration agreement unconscionable, the trial court denied Charter's motion, and Charter appealed. On appeal, Charter contends the trial court erred in concluding the arbitration agreement is unconscionable and in refusing to sever any provisions the court considered unconscionable.

We affirm the trial court's order denying the motion to compel arbitration (though we disagree with certain particulars of the trial court's reasoning). In affirming, we also disagree with *Patterson v. Superior Court* (2021) 70 Cal.App.5th 473 (*Patterson*), which considered the enforceability of a provision in the same arbitration agreement at issue here that awards attorney fees to the prevailing party on a motion to compel arbitration. After concluding that the provision is not enforceable as written, the court in *Patterson* incorporated an implied term bringing the provision into accord with the asymmetrical attorney fee standard of FEHA under section 12965, subdivision (c)(6) (a prevailing defendant is entitled to attorney fees only if the employee's action was frivolous, unreasonable, or groundless.)[2] With that implied

---

[1]    All undesignated section references are to the Government Code.

[2]    Effective January 1, 2022, the Legislature renumbered former subdivision (b) of Government Code section 12965 as current subdivision

2

term, the court in *Patterson* found the provision enforceable. As we explain in detail below, we disagree with *Patterson's* analysis and find the provision unconscionable.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Charter created a program for resolving and ultimately arbitrating employment-related disputes, called Solution Channel. All individuals applying for a position with Charter were required to agree to participate in Solution Channel as well as agree to Charter's mutual arbitration agreement (arbitration agreement). Individuals who applied and received an offer from Charter were then required to complete a web-based onboarding process as a condition of employment. Prospective employees were prompted to review and accept various policies and agreements, including the arbitration agreement and the Solution Channel program guidelines (guidelines).

After agreeing to submit all employment-related disputes with Charter to arbitration, Ramirez was hired as an employee in July 2019. In May 2020, Charter terminated Ramirez. In July 2020, Ramirez filed suit, alleging multiple causes of action under FEHA and wrongful discharge in violation of public policy.

Charter filed a motion to compel arbitration and sought attorney fees in connection with its motion pursuant to the arbitration agreement. In opposition, Ramirez argued that the arbitration

_____

(c)(6). (Stats. 2021, ch. 278, § 7.) The language of this subdivision was left unaltered.

3

agreement was procedurally unconscionable because it was a contract of adhesion. She argued the agreement was substantively unconscionable for several reasons, including that it shortened the statute of limitations, broadened the employer's ability to recover attorney fees against an employee, unduly limited discovery, and favored the employer in defining the scope of the claims covered. She also argued that because unconscionability permeated the agreement, severance was not permissible. Lastly, Ramirez contended Charter was not entitled to attorney fees and in any event, the request for fees was itself substantially unconscionable. Charter responded that the arbitration agreement's terms were not unconscionable and, even if specific terms were unconscionable, the trial court should sever them and enforce the parties' agreement to arbitrate.

Prior to the hearing on the motion, the court issued a tentative ruling granting Charter's motion to compel. The tentative ruling found that there was minimal procedural unconscionability from the adhesive nature of the contract, and two points of substantive unconscionability—the restriction on timing for arbitration of FEHA claims and the remedy provision for prevailing party fees—were severable. The tentative ruling denied Charter's request for attorney fees in connection with the motion to compel pursuant to the arbitration agreement.

At the November 16, 2020 hearing, counsel for Ramirez noted that in the tentative ruling the court "found minimal procedural unconscionability because there was a forced arbitration agreement as a condition of employment." But there were in fact three, not two, points

4

of substantive unconscionability that were part of the tentative: the restriction on timing for arbitration of FEHA claims; the remedy provision for prevailing party fees; and the attorney fee provision regarding a party bringing a successful motion to compel. Counsel further argued the arbitration agreement lacked mutuality and that the 90 days to complete discovery was also substantively unconscionable. Counsel emphasized that unconscionability must be analyzed at the time the parties entered into the agreement, instead of at the time of Ramirez's lawsuit. In response, counsel for Charter argued the agreement was not substantively unconscionable. However, severance would be appropriate as the disputed terms do not specifically affect Ramirez. The court took the matter under submission.

On November 25, 2020, the court issued a final written ruling denying Charter's motion to compel. The court noted that it was undisputed the arbitration agreement was an adhesion contract as a mandatory condition of employment. However, adhesion alone establishes only a minimum degree of procedural unconscionability. But the court further found the agreement was substantively unconscionable because it shortened the statute of limitations for FEHA claims, failed to restrict attorney fee recovery to only frivolous or bad faith FEHA claims (contrary to FEHA), and impermissibly provided for an interim fee award for a party successfully compelling arbitration. The court did not find the limited discovery or the exclusion of certain claims under the agreement substantially unconscionable. The court concluded the arbitration agreement is "permeated with unconscionability" and therefore, severance was improper.

Charter filed a timely notice of appeal.

## DISCUSSION

Charter contends the trial court erred in denying its motion to compel because the arbitration agreement is neither procedurally nor substantively unconscionable. And even if it were, the trial court should have severed the substantively unconscionable provisions, upheld the agreement, and ordered the parties to arbitration. Ramirez responds that the arbitration agreement is procedurally and substantively unconscionable and the trial court's decision to find the entire agreement unconscionable, rather than severing the unconscionable provisions, should not be disturbed on appeal.

We conclude the arbitration agreement was a contract of adhesion, which establishes a minimal degree of procedural unconscionability. We further conclude the agreement contained a high degree of substantive unconscionability based on the restriction of the statute of limitations for FEHA claims, the provision granting an award of attorney fees for a prevailing party in compelling arbitration, the lack of mutuality, and the limitation on discovery. Therefore, we hold the arbitration agreement is permeated by unconscionability and cannot be enforced.

### A. *Standard of Review and Applicable Law*

An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) "Standards of review of orders on a motion to compel arbitration are not uniform. [Citation.] Generally, if

6

the trial court's order rests on a factual determination, the appellate court adopts a substantial evidence standard. If the court's decision rests solely on an interpretation of law, then we employ the de novo standard of review. [Citation.]" (*Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 468.)

A written agreement to submit a controversy to arbitration is valid and enforceable, absent a reason under state law, such as unconscionability, that would render any contract revocable. (Code Civ. Proc., § 1281; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); *Sandoval-Ryan v. Oleander Holdings LLC* (2020) 58 Cal.App.5th 217, 222.) "The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. [Citation.]" (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890; Civ. Code, § 1670.5, subd. (a) ["If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract"].

The doctrine of unconscionability has both a procedural and a substantive element. (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243–1244 (*Baltazar*).) "'[T]he former focus[es] on "'oppression'" or "'surprise'" due to unequal bargaining power, the latter on "'overly harsh'" or "'one-sided'" results.' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) But the two elements need not exist to the same degree. The more one is present, the less the other is

7

required. (*Armendariz, supra*, 24 Cal.4th at p. 114 [unconscionability is measured on a sliding scale in which greater procedural unconscionability requires less substantive unconscionability, and vice versa].)

If a court finds a clause within a contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or instead sever the unconscionable clause and enforce the remainder of the contract. (Civ. Code, § 1670.5, subd. (a); *Armendariz, supra*, 24 Cal.4th at p. 122; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 905 (*Davis*).) "We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion." (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 453, citing *Armendariz, supra*, 24 Cal.4th at p. 124.)

B. *Procedural Unconscionability*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized . . . and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 126.) Here, it is undisputed that the arbitration agreement is an adhesion contract because it was a mandatory condition of employment.

"[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." (*Sanchez v. Valencia*

8

*Holding Co., LLC* (2015) 61 Cal.4th 899, 915; *Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 591 [adhesion "alone is a fairly low level of procedural unconscionability"].) "However, the fact that the arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable. Courts have consistently held that the requirement to enter into an arbitration agreement is not a bar to its enforcement. [Citations.]" (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179.) Rather, it is "'the beginning and not the end of the analysis insofar as enforceability of its terms is concerned.' [Citation.]" (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819.) When, as here, the degree of procedural unconscionability is low, the agreement must be enforced unless the degree of substantive unconscionability is high. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704; accord, *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981–982.)

C. *Substantive Unconscionability*

Charter contends the trial court erroneously found the arbitration agreement substantively unconscionable based on the restriction on the statute of limitations for FEHA claims, the provision granting the prevailing party in the arbitration any remedy (including attorney fees) available under applicable law, and a separate provision granting attorney fees in connection with a successful motion to compel arbitration. We conclude the trial court's analysis was correct as to the restriction on the statute of limitations and the attorney fee provision

9

on a motion to compel arbitration. We conclude the trial court was incorrect as to the remedy provision for a prevailing party in the arbitration, the limitations on discovery, and the mutuality of the agreement.

### 1. *Restriction on Statute of Limitations*

"While parties to an arbitration agreement may agree to shorten the applicable limitations period for bringing an action, a shortened limitations period must be reasonable. [Citation.] "'A contractual period of limitation is reasonable if the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained.'" [Citation.]" (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 731 (*Baxter*).)

At the time the arbitration agreement was executed, a FEHA administrative claim had to be filed with the Department of Fair Employment and Housing (DFEH) within one year of the employer's discriminatory act. (*Baxter, supra,* 16 Cal.App.5th at p. 730; see also Civ. Code, § 1670.5, subd. (a); *O'Hare v. Municipal Resources Consultants* ( 2003) 107 Cal.App.4th 267, 281 ["a judicial determination of unconscionability focuses on whether the contract or any of its provisions were 'unconscionable at the time it was made'"].)[3]  Further,

---

[3]     Effective January 1, 2020, the Legislature "enlarge[d] the time for filing a [FEHA] claim [from one] to three years from the date of the

10

under the law as it existed at the time of execution of the agreement (as now), DFEH had up to one year from the filing of the administrative claim to complete its investigation and issue a "right-to-sue" letter (Gov. Code, § 12965, subd. (c)(1)(A)), and a lawsuit alleging FEHA claims had to be filed within one year of the issuance of the "right-to-sue" letter. (Gov. Code, §§ 12960, subd. (f)(1)(B), 12965, subd. (c)(1)(C).) Thus, factoring in the time limit for an employee to file a claim with DFEH and for DFEH to investigate and respond to the claim, the outside limit to file a FEHA lawsuit under the law as it existed when the arbitration agreement was executed could have been as long as three years.

Section E of the arbitration agreement provides, in pertinent part: "The aggrieved party must give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted. To be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body."[4]

---

challenged conduct." (*Brome v. Dept. of the California Highway Patrol* (2020) 44 Cal.App.5th 786, 793, fn. 2; see Gov. Code, § 12960, subd. (e)(5).)

[4]     Charter conveniently omits in its briefing and at oral argument the fact that the guidelines provided an identical timetable for filing a claim with Solution Channel as Section E of the arbitration agreement. The guidelines stated the statute of limitations was "[t]he period of time during which the law allows an individual or entity to pursue a particular type of claim. . . . Also, to be timely, any claim that must be filed with an administrative agency

11

Under this provision of the arbitration agreement, the period within which an employee must make a FEHA claim is one year, the applicable statutory period under FEHA for filing an administrative claim with DFEH. (See *Baxter, supra,* 16 Cal.App.5th at p. 730.) But as we have noted, FEHA grants DFEH up to one year to investigate and issue a "right-to-sue" letter (Gov. Code, § 12965, subd. (c)(1)(A)), and grants the employee one year after the "right-to-sue" letter to file an action in court (Gov. Code, §§ 12960, subd. (f)(1)(B), 12965, subd. (c)(1)(C)).

The practical effect of the arbitration agreement is therefore twofold: it cuts the period that would otherwise apply to file a FEHA action in court by as much as two years, and (given that DFEH has up to one year to investigate and issue a "right-to-sue" letter), it makes it possible that the employee will be compelled to arbitrate before DFEH has completed its investigation and issued a "right-to-sue" letter. Therefore, we agree with the trial court that reducing the period within which a FEHA claim may be brought from three years to one is substantively unconscionable, as it substantially conflicts with the statutorily sanctioned period for vindicating statutory rights under FEHA. (See *Ellis v. U.S. Security Associates* (2014) 224 Cal.App.4th 1213, 1223 [employment discrimination claims are already subject to

---

or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or similar document would have had to be filed with the agency or other administrative body."

shortened statutes of limitation]; *Baxter, supra,* 16 Cal.App.5th at pp. 730–732 [finding substantively unconscionable a shortened limitation period of one year for FEHA claims when, under then-current law, the outside limit to file a lawsuit under FEHA was as long as three years].)[5]

Charter notes that Ramirez sought an immediate "right-to-sue" from the DFEH and filed suit within one year of its accrual. Therefore, Charter contends that Ramirez was not forced to forfeit her right to a DFEH investigation because of the arbitration agreement. How Ramirez chose to enforce her claims does not affect the unconscionability analysis, which generally looks to an agreement "at the time it was made." (See Civ. Code, § 1670.5, subd. (a).) Furthermore, "protections under FEHA are for the benefit of the entire public, not just [a particular employee]. Thus, a mandatory arbitration provision required as part of an employment relationship cannot waive the statutory rights. [Citation.]" (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249; see also *Armendariz, supra,* 24 Cal.4th at p. 101 ["it is evident that an arbitration agreement cannot be made to

---

[5] Charter relies on a federal district court case, *Greer v. Sterling Jewelers, Inc.* (E.D. Cal. July 10, 2018, case No. 1:18-cv-480) 2018 WL 3388086, to support its contention that similar provisions have been upheld by courts. We conclude the relevant provision in *Greer* is factually distinguishable. The provision in *Greer* stated, "[u]nless prohibited by law, a demand [for arbitration] must be made . . . no later than one (1) year after the alleged unlawful conduct occurred." (*Id.* at p. 5.) Unlike the case at bar, the clause within the agreement that prevents shortening a statute of limitations where "prohibited by law" saved the agreement from being rendered unconscionable. (*Ibid.*) There is no similar savings clause in the arbitration agreement here.

serve as a vehicle for the waiver of statutory rights created by the FEHA"].)

### 2. *Remedy Provision for a Prevailing Party*

A prevailing defendant in a FEHA case may recover attorney fees and costs only if the plaintiff's action was "frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (c)(6); see *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985.) The Solution Channel program guidelines provide: "At the discretion of the arbitrator, the prevailing party may recover any remedy that the party would have been allowed to recover had the dispute been brought in court."[6]

Charter contends the trial court misinterpreted this provision as allowing a prevailing defendant to recover attorney fees if a plaintiff's FEHA claims fail but were not frivolous. We agree that the trial court misinterpreted the provision.

The provision at issue entitles a prevailing party to a remedy, such as attorney fees, only if the party would be entitled to that remedy

---

[6] The arbitration agreement and the Solution Channel program guidelines also provide that Charter will pay administrative expenses and the arbitrator's fees, but all other costs, fees and expenses, "including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses." Although not raised by the parties and therefore not a basis for a finding of substantive unconscionability, we observe this provision requiring each party to bear its own attorney fees deprives an employee of his or her statutory right to recover attorney fees if the employee prevails on a FEHA claim. (See *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 251.)

14

if the dispute had been litigated in court. In court, a prevailing defendant in a FEHA case is entitled to an award of attorney fees only if the plaintiff's action was frivolous, unreasonable, or groundless. (Gov. Code, § 12965, subd. (c)(6).) Thus, in a FEHA case the arbitration agreement's remedy provision entitles Charter to attorney fees only in compliance with, not in violation of, FEHA: if the plaintiff's action was frivolous, unreasonable, or groundless. Therefore, we conclude the remedy provision in the arbitration agreement is not substantively unconscionable.[7]

### 3. *Interim Award of Attorney Fees Under Paragraph K*

Paragraph K of the arbitration agreement provides in relevant part: "The parties agree and acknowledge . . . that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay the other party all costs, fees and expenses that they incur in

---

[7] In finding the attorney fee provision in the arbitration agreement substantively unconscionable, the trial court relied on *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387 (*Trivedi*), disapproved on another ground in *Baltazar, supra,* 62 Cal.4th 1237. But the attorney fee provision invalidated in *Trivedi* involved a mandatory award of attorney fees to the prevailing party, in violation of the FEHA standard. (*Id.* at pp. 394–395.) It is thus distinguishable.

compelling arbitration, including, without limitation, reasonable attorneys' fees."

Charter contends that the trial court erred in concluding that paragraph K, which awards attorney fees to the prevailing party on a motion to compel arbitration, is substantively unconscionable. We disagree, and in the process also disagree with *Patterson, supra,* 70 Cal.App.5th 473, which (after concluding that the paragraph K as written is not enforceable) made it enforceable by implying a term that incorporates the FEHA asymmetrical rule of attorney fees (i.e., a prevailing defendant in a FEHA action can recover attorney fees only if the action was frivolous, unreasonable, or groundless), thereby bringing paragraph K into compliance with FEHA.

In *Patterson, supra,* 70 Cal.App.5th 473, our colleagues in Division Seven considered paragraph K in a procedural posture different than the present case. That is, the court in *Patterson* did not consider (as do we) the question of unconscionability in connection with a motion to compel arbitration. Rather, the court considered the enforceability of paragraph K in a mandate proceeding after the trial court had granted Charter's motion to compel arbitration of an employee's FEHA action and awarded Charter its attorney fees under paragraph K for the successful motion. (*Id.* at pp. 478–480.)

On the employee's petition for a writ of mandate to vacate the attorney fees award, our colleagues in *Patterson* reasoned that Charter was entitled to its attorney fees under paragraph K "to the extent not otherwise prohibited or limited by FEHA." (*Patterson, supra*, 70 Cal.App.5th at p. 486.) They also concluded that an employee may not

16

be required to waive the asymmetric FEHA attorney fee standard. (*Id.* at p. 488.) That standard, as previously noted, allows a prevailing defendant to recover attorney fees only if the plaintiff's action was frivolous, unreasonable, or groundless. (Gov. Code, § 12965, subd. (c)(6).)

Consistent with this analysis, the court in *Patterson* concluded that the attorney fee clause as written violated the employee's rights under FEHA: "Permitting Charter to recover its attorney fees for a successful motion to compel arbitration in a pending FEHA lawsuit without a showing the plaintiff's insistence on a judicial forum to determine his or her claims was objectively groundless . . . denies the plaintiff the rights guaranteed by section 12965[(c)(6)] with a corresponding chill on access to the courts for any employee or former employee who has an arguably meritorious argument that the Charter arbitration agreement is unenforceable. Even with a strong claim of unconscionability, an employee might not pursue it and risk a substantial award of attorney fees before arbitration begins." (*Patterson, supra,* 70 Cal.App.5th at p. 489.)

Nonetheless, the court rejected the employee's request to hold the clause unenforceable. Invoking "the strong public policy favoring arbitration" and the requirement that provisions in a contract be construed (where reasonable) in a manner that render them legal rather than void, the court "construe[d] the prevailing party fee provision in the arbitration agreement to impliedly incorporate the FEHA asymmetric rule for awarding attorney fees and costs." (*Patterson*, 70 Cal.App.5th at p. 490.) Thus, the court vacated the

17

attorney fee award and remanded the case to the trial court to hold a hearing to determine whether, under the FEHA standard, the employee's opposition to the motion to compel arbitration was frivolous, unreasonable, or groundless.

We agree with *Patterson* that paragraph K as written is unenforceable as being in violation of FEHA. We respectfully disagree, however, with our colleagues' analysis incorporating the FEHA attorney fee rule, thereby making the provision enforceable.

We begin the relevant language of the clause. A party's "failure or refusal . . . to submit to arbitration as required by this Agreement" is a "material breach." Further, "[i]f a judicial . . . proceeding is commenced in order to compel arbitration" (such as an employer's motion to compel arbitration) "and if arbitration is in fact compelled" (i.e., the motion is granted), "the party that resisted arbitration" (i.e., the employee who opposed the motion to compel arbitration) "will be required to pay" (i.e., without qualification) "the other party" (i.e., the employer) "all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees." We find this language unambiguous. There is no room to vary the terms by interpretation.

Whereas ambiguous terms in an arbitration agreement should be construed, where reasonable, in favor of legality, "[i]f contractual language is clear and explicit, it governs. [Citation.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; see Civ. Code, § 1643 ["A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, *if it can be done without violating the intention of the parties*" (italics

18

added)]; cf. *Serpa v. California Surety Investigations, Inc., supra,* 215 Cal.App.4th at p. 709 [holding an attorney fee provision in an arbitration agreement was not ambiguous as it "expressly requires each party to bear his, her or its own attorney fees"].) Thus, we disagree with *Patterson* that standard rules of contract interpretation support its analysis.

Further, the policy favoring arbitration does not permit the court to add an interpretive gloss to unambiguous provisions. *Patterson* cited two decision as supporting its authority to modify paragraph K by incorporating the FEHA attorney fee standard. In each, *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682 (*Pearson*), and *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473 (*Roman*), the appellate court interpreted *ambiguous language* in the arbitration agreement and invoked the policy favoring arbitration as a reason to construe the language in a manner that rendered it legal.

In *Pearson*, the language at issue declared the intention of the parties to the employment arbitration agreement "'to avoid the inconvenience, cost, and risk that accompany formal *administrative* or judicial proceedings.'" The employee argued that the language declaring an intent "to avoid" the listed negative characteristics of "formal administrative . . . proceedings" precluded the employee from seeking administrative remedies for violations of FEHA. (48 Cal.4th at p. 680.)

Our Supreme Court concluded that the provision was merely a statement of purpose and did not actually preclude the plaintiff from

pursuing any administrative remedy; and even if the agreement were understood to preclude "formal administrative proceedings," it would not be unlawful in all possible applications. (*Pearson, supra*, 48 Cal.4th at p. 682.)

The court then reasoned: "When an arbitration provision is *ambiguous*, we will interpret that provision, if reasonable, in a manner that renders it lawful, both because of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that we interpret a contractual provision in a manner that renders it enforceable rather than void. [Citations.]" (*Pearson, supra*, 48 Cal.4th at p. 682, italics added.) The court then interpreted the language in question "as stating an intention to lawfully preclude or restrict the parties to the arbitration agreement from submitting their claims for adjudication to an administrative entity such as the Labor Commissioner, at least to the extent set forth by the United States Supreme Court in [*Preston v. Ferrer* (2008) 552 U.S. 346, 360]. We therefore conclude that the inclusion of a provision limiting resort to an administrative forum does not render the arbitration agreement unconscionable or unenforceable." (*Ibid*.)

Similarly, *Roman* involved language in an arbitration agreement that was treated as ambiguous under the circumstances. In *Roman,* the employee signed a mandatory predispute agreement containing an arbitration clause that provided: "'*I agree*, in the event I am hired by the company, that all disputes and claims that might arise out of my

20

employment with the company will be submitted to binding arbitration.'" (*Roman, supra*, 172 Cal.App.4th at p. 1466, italics added.) Although the rest of the agreement was bilateral, the employee argued that the "I agree" language manifested only a unilateral obligation to arbitrate. (*Ibid.*) Assuming the language of the arbitration provision was ambiguous, the appellate court noted the public policy favoring arbitration and the requirement that the court interpret ambiguous provisions in a manner that renders them legal rather than void. (*Id.* at p. 1473.) Under these rules, the court held that the "mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision [does not] destroy[] the bilateral nature of the agreement." (*Ibid.*)

On examination, we do not agree that these cases support our *Patterson* colleagues' interpretation of paragraph K. These decisions apply standard rules of contract interpretation to ambiguous terms. As we have observed, the language at issue in paragraph K is not ambiguous; it leaves no reasonable basis for an interpretation in variance with the plain meaning.

Our colleagues in *Patterson* also found that incorporating the FEHA asymmetrical rule of attorney fees into paragraph K by implication was "precisely the course followed by the Supreme Court in" *Armendariz, supra,* 24 Cal.4th at page 113, where the Supreme Court incorporated into the arbitration agreement a term imposing on the employer the sole duty to pay arbitration costs in employer-compelled

21

arbitration. (70 Cal.App.5th at p. 490.) We respectfully disagree that *Armendariz* supports the analysis in *Patterson*.

In *Armendariz*, the arbitration agreement compelled the employee to arbitrate employment claims and stated that the employee "'agree[d] to submit any such matter to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq.'" (*Armendariz, supra*, 24 Cal.4th at p. 92.)[8] The agreement did not have a specific provision defining who would pay the costs of the arbitration. Thus, it was governed by the default cost-sharing scheme of Code of Civil Procedure section 1284.2, which provides: *"Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree*, each party to the arbitration shall pay his pro rata share of the expenses and fees" of the arbitration. (Italics added.)[9]

_____

[8]    The clause stated in relevant part: "'I agree as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment or was in violation of any express or implied condition, term or covenant of employment, whether founded in fact or in law, including but not limited to the covenant of good faith and fair dealing, or otherwise in violation of any of my rights, I and Employer agree to submit any such matter to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq. or any successor or replacement statutes.'" (24 Cal.4th at p. 92.)

[9]    Civil Code section 1284.2 provides in full: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including

The court in *Armendariz* agreed with the employees that applying this default provision would impose "substantial forum fees . . . contrary to public policy, and is therefore grounds for invalidating or revoking an arbitration agreement and denying a petition to compel arbitration under Code of Civil Procedure sections 1281 and 1281.2." (*Armendariz, supra*, 24 Cal.4th at p. 110.) With these concerns in mind, the court promulgated the rule that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Id.* at pp. 110–111, italics omitted.)

The court later analyzed whether the rule requiring the employer to pay the costs of arbitration was inconsistent with the default cost-sharing scheme of Code of Civil Procedure section 1284.2 (i.e., unless the arbitration agreement provides otherwise, each party pays a pro rata share). The court found no inconsistency: the agreement to submit a FEHA claim to arbitration "is implicitly an agreement to abide by the substantive remedial provisions of the [FEHA] statute," which (the court found) forbids sharing of costs. (*Armendariz, supra*, 24 Cal.4th at p. 112.) Further, the court found "little reason to believe that the Legislature that passed Code of Civil Procedure section 1284.2 contemplated a situation in which the intended beneficiary of such an

---

counsel fees or witness fees or other expenses incurred by a party for his own benefit."

antidiscrimination statute would be compelled to pay large arbitration costs as a condition of pursuing a discrimination claim. Thus, we construe the FEHA as implicitly prohibiting such costs, a prohibition which the default provisions of section 1284.2 do not displace." (*Id*. at pp. 112–113.)

The court then concluded: "We therefore hold that a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration. Accordingly, we interpret the arbitration agreement in the present case as providing, consistent with the above, that the employer must bear the arbitration forum costs. The absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 113.)

From our discussion of *Armendariz,* we conclude that it does not support the reasoning in *Patterson.* In *Armendariz,* the agreement had no provision governing costs, and the court was not called upon to interpret one. Thus, the Supreme Court did not make the arbitration agreement enforceable by grafting an implied cost sharing term onto an express provision governing costs. Rather, as a matter of public policy and statutory interpretation, the court imposed an implied provision (the employer must bear the costs of employer-compelled arbitration) in place of the default cost provision of Code of Civil Procedure 1284.2 (arbitration costs must be shared pro rata by the parties), which would have applied because the agreement *did not have* an express cost provision. The import of the court's holding was, therefore, that *"[t]he*

*absence of specific provisions on arbitration costs* would . . . not be grounds for denying the enforcement of an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 113, italics added.)

In short, we disagree that *Armendariz* supports the holding in *Patterson* that paragraph K, which is (as *Patterson* acknowledges) unenforceable as written, can be saved by impliedly incorporating the FEHA asymmetrical attorney fee standard into its unambiguous language. We therefore conclude, as did the trial court, that paragraph K is unconscionable.

### 4. *Other Terms of the Arbitration Agreement*
#### a. *Mutuality*

Ramirez contends the trial court erred in rejecting her argument that the arbitration agreement lacked mutuality by excluding claims likely to be brought by an employer. "An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party. [Citations.]" (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 724 (*Fitz*).)

The arbitration agreement specifically covers claims "related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are dominated as tort, contract, common law, or statutory claims," including without limitation claims for: collection of overpaid wages and commissions; damage to or loss of Charter property; recovery of unauthorized charges on company credit card; whistleblowers; unlawful termination; unlawful failure to

25

hire or failure to promote; violations of wage and hour laws; unlawful discrimination or harassment; unlawful retaliation; violations under the federal Medical Leave Act, Americans with Disabilities Act, Sarbanes-Oxley Act, and Occupational Safety and Health Administration. The arbitration agreement also covers "all disputes, claims, and controversies set forth . . . above, whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to . . . pre-employment or employment relationship with Charter)."

On the other hand, the arbitration agreement specifically excludes "claims for injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information." The agreement further excludes claims: arising under separate or severance agreements or non-compete agreements; for theft or embezzlement or any other criminal conduct; and over the validity of any party's intellectual property rights.

We agree with Ramirez and conclude that the arbitration agreement is unfairly one-sided because it compels arbitration of the claims more likely to be brought by an employee, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by an employer, the stronger party.

The decision in *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167 (*Mercuro*) is instructive. In *Mercuro*, the Court of Appeal held the arbitration agreement covered "some employment-related claims

26

including employment discrimination but excluded others such as . . . equitable relief for unfair competition, unauthorized disclosure of trade secrets or violation of intellectual property rights" to be unfairly one-sided in favor of the employer. (*Id.* at p. 172.) The court noted that an employee terminated for stealing trade secrets would have to arbitrate his or her wrongful termination claim, but the employer could avoid arbitration by simply requesting injunctive or declaratory relief. (*Id.* at p. 176.) The court concluded that the agreement compelled "arbitration of the claims employees are most likely to bring" but exempted "from arbitration the claims [the employer] is most likely to bring against its employees." (*Ibid.*) As such, it was unconscionably one-sided.

Charter points out that the agreement here excludes certain claims significant to employees such as claims for workers' compensation, unemployment benefits, and severance/noncompete agreements. "These exceptions do not turn what is essentially a unilateral arbitration agreement into a bilateral one. Workers' compensation and unemployment benefits are governed by their own adjudicatory systems; neither is a proper subject matter for arbitration." (*Mercuro, supra,* 96 Cal.App.4th at p. 176.) And claims arising out of a severance or noncompete agreement are most likely to be brought by the employer, not the employee. (See *Fitz, supra,* at p. 725 ["it is far more often the case that employers, not employees, will file [actions over noncompete agreements]".)

In support of the trial court's finding, Charter further contends none of the excluded claims are at issue in Ramirez' case. However, the unconscionability analysis evaluates whether the agreement is bilateral

"at the time it was made" rather than as applied to specific plaintiff. (See Civ. Code, § 1670.5, subd. (a); see generally, *Fitz, supra,* 118 Cal.App.4th 702.)

### b. *Discovery Limitation*

The arbitration agreement states that the arbitration will be conducted "pursuant to the Solution Channel Program Guidelines." The guidelines in turn provide that "[t]he parties will have 90 days to exchange information and take depositions." Each party will be permitted to take up to four depositions, 20 total interrogatories (including subparts), and 15 total requests for documents to the other party. In addition, "[a]ny disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute."

Ramirez contends that the trial court erred in finding that the limitations on discovery were not substantively unconscionable. We agree.

"Adequate discovery is indispensable for the vindication of statutory claims. [Citation.]" (*Fitz, supra*, 118 Cal.App.4th at p. 715.) But adequate discovery does not mean unfettered discovery. (*Ibid.*) The parties may agree to something less than the full panoply of discovery available in California's discovery statutes. (*Armendariz, supra*, 24 Cal.4th at pp. 105–106.) Nonetheless, "arbitration agreements must 'ensure minimum standards of fairness' so employees can vindicate their public rights. [Citation.]" (*Fitz, supra,* at p. 716.)

28

Generally, unconscionability is determined "at the time [the agreement] was made" (Civ. Code, § 1670.5), yet courts have consistently assessed unconscionability for limitations on discovery as applied to a particular plaintiff (*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 404–405 (*Sanchez*)).

"In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims. [Citation.]" (*Davis, supra,* 53 Cal.App.5th at pp. 910–911.)

Ramirez argues that the limitation of discovery in and of itself denies her a reasonable opportunity to prove her statutory claims. However, as observed by the trial court, "[l]imited discovery rights are the hallmark of arbitration" (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 790) and there must be some showing of inadequacy under the circumstances of the case (*Sanchez, supra,* 224 Cal.App.4th at p. 405).

Although limitations on discovery are generally permitted, we conclude that Ramirez met her burden in the trial court of showing inadequacy in the discovery limitations of Charter's agreement. In the trial court, Ramirez estimated (with no dispute from Charter) that she would need to take at least seven depositions: her former supervisor,

29

the Human Resources (HR) person, the four people hired by her former supervisor during her pregnancy leave, and the person(s) most knowledgeable at Charter regarding its HR and pregnancy leave policies and procedures. Therefore, Ramirez demonstrated (with no rebuttal from Charter) that the guidelines's limitation on depositions (four) is inadequate to permit Ramirez fair pursuit of her claims (which requires at least seven depositions). (*Davis, supra,* 53 Cal.App.5th at pp. 913–914.)

Charter contends that the guidelines's provision allowing the arbitrator to resolve "[a]ny disagreements regarding the exchange of information or depositions," is tantamount to providing the arbitrator authority to order additional depositions.[10] But resolving "disagreements" between the parties "regarding . . . depositions" cannot reasonably be construed to include the authority to increase the number of depositions permitted by the guidelines. Rather, it reasonably

---

[10] In the trial court, Charter did not contend that this provision permitted the arbitrator to grant additional discovery. Rather, Charter contended, and the trial court found, that the arbitration agreement incorporated the AAA rules, which granted discretionary authority to the arbitrator to order additional discovery. (*Roman, supra,* 172 Cal.App.4th at p. 1475 [under AAA rules, the arbitrator has authority to order "'such discovery, by way of deposition, interrogatory, document production, or otherwise'"].) Charter does not resurrect this argument on appeal. In any event, we agree with Ramirez that the arbitration agreement and the guidelines fail to incorporate the AAA rules. The only reference to the AAA rules in either document is in relation to the selection of an arbitrator, and Charter's obligation to pay the AAA administrative fees. In fact, the arbitration agreement clearly stated the applicable rules in paragraph I: "Arbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines."

appears to refer only to the "disagreements" between the parties regarding the four depositions permitted by the guidelines, things like the identity of persons sought to be deposed, objections made during depositions, and the dates, location, and duration of depositions.

It is true that Ramirez does not explain with any particularity why the limitations on written discovery (20 total interrogatories, including subparts, and 15 total requests for documents) are inadequate. Nor does she demonstrate any need for a longer period of discovery than the 90-day limit in the guidelines. However, we conclude the limitation on depositions is sufficient to show substantive unconscionability. Under the deposition limit, Ramirez would be deprived of the opportunity to prepare her case because of her inability to depose three of the minimum seven necessary witnesses. That, we conclude, would not provide her a fair opportunity to present her case.

## D. *Severance*

Charter contends severance is appropriate, and the court abused its discretion by failing to sever the unconscionable provisions. We affirm the denial of severance.

"An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with additional terms. [Citation.]" (*Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 223.) Severance may be properly denied when the agreement contains more than one unconscionable provision, and "'there is no single provision a court can strike or restrict

31

in order to remove the unconscionable taint from the agreement.' [Citation.]" (*Baxter, supra,* 16 Cal.App.5th at p. 738.)

Here, we conclude that the limitations period for bringing a FEHA claim under the agreement, the provision granting an award of attorney fees for a prevailing party in moving to compel arbitration (paragraph K), the lack of mutuality, and the limitation on discovery (specifically, depositions) are substantively unconscionable. In so concluding, we have disagreed with the trial court's findings that the arbitration agreement did not lack mutuality and the limitation on discovery was reasonable. We also set aside the trial court's conclusion that the remedy provision in the arbitration agreement (as applied to prevailing party attorney fees) is substantively unconscionable.

Although we find that the trial court erred on these two points, we do not find the errors prejudicial with respect to whether the unconscionable provisions should be severed. Given the multiple defects we have found that work to Ramirez's distinct disadvantage, it is not reasonably probable that the trial court would have reached a different decision regarding severability had the errors not been committed. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) And given that we have found the agreement permeated by significant unconscionable terms, a denial of severance is entirely reasonable.[11]

---

[11] We note in particular that it does not appear that severing the unconscionable limitation on depositions is possible. The arbitration agreement does not provide the arbitrator discretion, apart from the power conferred by the agreement, to order additional discovery. Thus, it is not at all clear on what authority the arbitrator could order *any* depositions.

## DISPOSITION

The trial court's order denying Charter's motion to compel arbitration is affirmed.  Ramirez is entitled to her costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                    WILLHITE, J.

We concur:


MANELLA, P. J.


COLLINS, J.